Francisco **GONZALEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–87–00082–CR.

Court of Appeals of Texas,
El Paso.

Feb. 24, 1988.

Rehearing Denied March 23, 1988.

---

11. 633 S.W.2d 590 (Tex.App.1982).

12. Per *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986).

Russell M. Aboud, Aboud & Aboud, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and SCHULTE and FULLER, JJ.

## OPINION

FULLER, Justice.

This is an appeal from a jury conviction for delivery of heroin. The court assessed punishment at twelve years' imprisonment. We affirm.

Point of Error No. One complains of two instances of improper prosecutorial jury argument outside the record. The first asserted that Appellant had a mouthful of heroin-filled balloons at the scene of the offense. The second suggested that Appellant was "strung out" on heroin. Neither comment was proper. There was no evidence to suggest either assertion, and neither can be sanctioned under the reasonable inference principle. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973).

Neither statement was the subject of trial objection by Appellant. The general rule is that improper jury argument is waived by failure to object. *Landry v. State,* 706 S.W.2d 105, 111 (Tex.Crim.App.1985); *Romo v. State,* 631 S.W.2d 504, 505 (Tex. Crim.App.1982). Both *Landry* and *Romo* assert an exception to the general rule to the effect that review is not waived *by failure to object* if the argument is so prejudicial that its harmful effect cannot be cured by jury instruction to disregard. After researching the origin of this "exception," we find that it should properly be christened "The Rule that Never Was." *Landry* cites only *Romo* for such proposition. *Romo* in turn attributes this "exception" to three earlier cases: *Plunkett v. State,* 580 S.W.2d 815 (Tex.Crim.App.1979); *Smith v. State,* 541 S.W.2d 831 (Tex.Crim. App.1976); *Rodriquez v. State,* 530 S.W.2d 944 (Tex.Crim.App.1976). In *Plunkett,* a murder conviction was reversed because the charge to the jury allowed conviction on an alternate statutory theory not alleged in the indictment. *Plunkett,* at 818. In a footnote, the Court asserted that the charge error was compounded by the prosecutor's argument emphasizing the theory not embodied in the indictment. The conviction was ultimately affirmed on rehear-

ing. The erroneous charge, not objected to at trial, was held to be not fundamentally defective since the extraneous theory was in the converse/acquittal application paragraph, not the application paragraph applicable to a guilt finding, and therefore did not "authorize" conviction on a theory outside the pleadings. The opinion on rehearing went on to discuss grounds of error initially avoided by the Court. The "exception" noted by *Landry* and *Romo* appears in the portion addressing the prosecutor's argument for the alternate theory of guilt (formally addressed in footnote 1 to the original opinion). The Court, having found the unobjected-to charge error nonfundamental and hence waived, then simply noted that the argument based on the erroneous charge was also not objected to. The so-called "exception" is stated and the ground of error overruled. *Plunkett*, at 823. Interestingly, later in the same opinion, the Court addressed three segments of the prosecutor's guilt argument informing the jury as to range of punishment—two not objected to on the grounds raised on appeal, one objected to (sustained) but without request for curative instruction. The Court's conclusion:

> Appellant did not receive an adverse ruling. Nothing is preserved for our review.

*Plunkett*, at 824.

The next ground of error in *Plunkett* also addressed improper argument presenting the prosecutor's personal opinion. *Plunkett*, at 824–825. The trial court sustained that objection and instructed the jury to disregard. The Court cited the rule, with which we agree, that erroneous argument is generally cured by instruction to disregard, and the exception *to that rule*, with which we also agree, that only an argument so prejudicial as to be immune to cure may still result in reversal. Next, the Court addressed argument purportedly outside the record but found it to be within the range of reasonable inference. The final ground of error also addressed argument outside the record, and found that it

was within the evidence presented. *Plunkett*, at 825. In short, *Plunkett* itself does not stand for the exception recited in *Landry* and *Romo*. The phraseology of the exception is contained within the body of the opinion, but bears no relationship to the ground of error under analysis at that point. Elsewhere in the same opinion, waiver results from failure to object without any reference to such "exception". The phrasing of the "exception" may contribute to pithy headnotes, but bad law.

*Plunkett* does cite the two earlier cases for such "exception." In *Smith*, on rehearing, the Court addressed three grounds of error dealing with jury argument. *Smith*, at 840–841. The first was found to be a proper response to prior argument by defense counsel. The second was a little more complicated. The argument was based upon testimony to which there had been no initial objection. During subsequent voir dire, the defense objection was sustained but no instruction to disregard was requested. During argument, the objection was that the prosecutor's comment was outside the record. It was overruled. On appeal, the complaint was that the argument improperly bolstered the testimony. The Court of Criminal Appeals' conclusion was that no such objection was raised during trial and nothing was presented for review. *Id.* at 841. With regard to the third ground of error, the Court noted, "[n]o objection was made by appellant to this argument. Nothing is presented for review." *Id.* In summary, there is absolutely no mention of the so-called "exception" in *Smith*. In fact, the entire thrust of the opinion as to jury argument is waiver.

Turning to the one and one-half page opinion in *Rodriquez*, we find that in addressing the only ground of error relating to jury argument, the Court ruled that it was a proper response to prior defense argument, and:

> We further find no objection; hence, nothing is presented for review.

*Id.* at 946.

The so-called "exception" never existed and should not exist today. On its face it

mixes apples and oranges. The fact that an argument may be curable may pertain to failure to request curative instruction but bears no relationship to failure to object. To accept the "exception" would be to accept a circumstance in which there is no need to object to jury argument at all. All alleged error would be subject to review upon initial appellate complaint, with the same basic standard of review for reversal as if it was objected to at trial. Of further significance is the fact that, despite recitation of the "exception", in none of the cited cases was reversible error found with regard to argument. In fact, the Court in *Landry* castigated appellate counsel who:

> [H]as failed to direct us to any case wherein this Court held such comments to be reversible error *without an objection.* [Emphasis in original.]

*Landry,* at 111. Little wonder, since this errant headnote "exception" has never been affixed to any body of supporting case authority.

■ Accordingly, the rule is waiver of appellate review in the absence of timely, specific trial objection which comports with the point of error urged on appeal. Collateral rules with regard to request for curative instruction and waiver and exception at that stage are beyond the purview of this appeal. Point of Error No. One is overruled.

■ Points of Error Nos. Two, Three and Four assert error in the trial court's failure to suppress in-court identification of the Appellant by the undercover officer who purchased the heroin from him. The officer testified that he recognized the Appellant from three prior observations at the buy-site. He made the instant purchase during broad daylight, face-to-face, at arm's length distance. When he returned to the police station, he looked through a stack of forty to fifty photographs of known or suspected drug dealers to see if Appellant's picture was present in the hopes of ascertaining his name. Appellant suggests that this photographic review: (1)

should be treated the same as a photographic line-up conducted for civilian witnesses; (2) should be treated as impermissibly suggestive (either because of the facts in evidence or by presumption due to purported inability to reconstruct the array for court review); (3) and led to a substantial likelihood of misidentification necessitating reversal. We find no need to pass on the first proposition. We note a substantial question as to preservation of error. The identification suppression issues were fully litigated in advance of trial by another district judge, with a ruling adverse to Appellant. A record was made of that hearing and was used in the trial to impeach the undercover officer. That transcription was not included within the present record on appeal. The trial judge, for some reason, treated the prior hearing as a nullity, and permitted redevelopment of the issues as they arose in the instant jury trial. We further note that while Appellant asserts that the State could not produce the "photographic array" the testimony does not support such a conclusion:

> Q. And could you locate that stack of photographs if you needed to, Officer?
>
> A. I could try. I couldn't say I could find it, but I could try.

(R II, 17). In any event, the record clearly demonstrates that the in-court identification by Officer Saiz was of an independent origin. Saiz testified unequivocally that his identification was based upon his observations at the time of the offense, not upon the photograph. Based upon the facts recited above, Saiz had an adequate opportunity to observe the Appellant and formulate a basis for his in-court identification. *Rudd v. State,* 616 S.W.2d 623, 624 (Tex. Crim.App.1981); *Banks v. State,* 630 S.W. 2d 656, 657–658 (Tex.App.—Houston [1st Dist.] 1982, PDRR). Points of Error Nos. Two, Three and Four are overruled.

■ Point of Error No. Five asserts error in overruling the defense motion to suppress the physical evidence. After making the purchase, Officer Saiz kept the

balloon of heroin in his pants pocket, unmarked, for two to three hours before marking it and depositing it in the narcotics locker at the narcotics division. Saiz conceded that he could have made other purchases on the same day. The issue is not preserved for review. At the time the evidence was offered, defense counsel expressly stated that he had no objection. *Moraguez v. State,* 701 S.W.2d 902, 904 (Tex.Crim.App.1986). In any event, given the state of the testimony, Appellant's complaint would go to the weight of the evidence and not its admissibility. There was no affirmative evidence of comingling at the time this balloon was in Saiz's pocket. Saiz's in-court identification was unequivocal. Point of Error No. Five is overruled.

The judgment is affirmed.