COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-440-CR

LUCIO PEREZ MALDONADO APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM 
OPINION
(footnote: 1)

  ------------  

Introduction

Appellant Lucio Perez Maldonado appeals his conviction for four counts of indecency with a child by contact.  In two issues, he contends that the trial court abused its discretion by admitting extraneous offense evidence during the guilt-innocence phase of the trial.  We affirm.

Background

A jury convicted appellant of four counts of indecency with E.M., a ten-year-old child.  The State’s evidence showed that appellant was the boyfriend of E.M.’s paternal grandmother.  During the State’s case-in-chief, E.M. identified approximately five occasions when appellant touched her “girl’s private and on [her] chest”:  on a couch in her grandmother’s living room; at the home of her great aunt
, Lupe Hernandez, while Lupe’s daughter was in a nearby room; at Lupe’s house while her brother was asleep in the same room;  while she was alone with appellant in a car; and in a bedroom at her grandmother’s house while her family members were in nearby rooms.  After the jury found appellant guilty of four counts of indecency with a child by contact, appellant pleaded true to two enhancement allegations.  The jury assessed appellant’s punishment at seventy years’ imprisonment on each of the four counts and the trial court sentenced appellant accordingly, with the sentences to run consecutively.

Extraneous Offense Evidence

In his first issue, appellant asserts that the trial court abused its discretion by admitting the testimony of E.M.’s cousin, Martha Garcia, that appellant molested her in February of 1992 when she was eleven years old, because it was inadmissible extraneous offense evidence under rule 404(b) of the rules of evidence and appellant did not “open the door” to the introduction of the extraneous offense evidence by presenting a defensive theory that he lacked the opportunity to molest E.M.
(footnote: 2)
 Appellant’s trial theory was that E.M. made up the story about appellant as part of a”scheme or conspiracy” between E.M. and her mother to help her mother avoid being sent to prison for violating the terms of her community supervision.
(footnote: 3)  According to the State, appellant presented an additional theory through the testimony of E.M.’s grandmother and great aunt, that appellant did not have the opportunity to commit the offenses because he was never alone with E.M
.  Appellant adamantly denies that he presented a defensive theory that he lacked the opportunity to commit the offense.  To rebut appellant’s conspiracy and alleged lack of opportunity theories, the State called Garcia, who testified that appellant rubbed her breasts and “vagina” in 1992 when she was eleven years old when another person was in the same room.

A trial court’s decision to admit or exclude evidence is reviewed under an abuse of discretion standard.
(footnote: 4)  We will not reverse a trial court’s ruling unless that ruling falls outside the zone of reasonable disagreement.
(footnote: 5)  Further, a trial court’s decision regarding admissibility of evidence will be sustained if correct on any theory of law applicable to the case, even when the court's underlying reason for the decision is wrong.
(footnote: 6)
 Rule 404(b) prohibits the admission of evidence of “other crimes, wrongs, or acts” in a criminal case to prove that the defendant acted in conformity with his character to commit crimes.
(footnote: 7)  Such extraneous offense evidence may be admitted for other purposes, however, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
(footnote: 8)  

In addition, 
extraneous offense evidence that tends to rebut some defensive theory is relevant beyond its tendency to prove a person's character or that he acted in conformity therewith.
(footnote: 9)  As a general rule, however, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not by elicited by “prompting or maneuvering” by the State.
(footnote: 10)
 Here, Garcia’s testimony served to rebut both appellant’s conspiracy theory and his theory of lack of opportunity.  Garcia’s testimony rebutted appellant’s conspiracy theory by showing appellant’s prior misconduct in circumstances not involving possible ulterior motives by the complainant.
(footnote: 11)  Garcia’s testimony rebutted appellant’s lack of opportunity theory by showing that the prior offense occurred, as did some of the offenses in this case, with another person in the same room.  Thus, although Garcia’s testimony regarding appellant’s extraneous offense would have been inadmissible character evidence if offered to prove that appellant acted in conformity therewith in the present case, her testimony was relevant for at least two permissible purposes.  
Therefore, 
we cannot say that the trial court abused its discretion by admitting Garcia’s testimony over appellant’s 404(b) objection.  We overrule appellant’s first issue.

Appellant argues that the testimony elicited from the grandmother and the great aunt did not open the door to the extraneous offense evidence.   We disagree.  When “the only relevance of [a witness’s testimony is] the implicit inference” that the appellant could not have committed the charged offense for a particular reason, the appellant has presented testimony subject to rebuttal with extraneous offense evidence.
(footnote: 12)   In this case, the only relevance of E.M.’s grandmother and great aunt’s testimony that appellant was never alone with E.M. was to show that it was impossible for appellant to molest her because he lacked the opportunity.  The State was entitled to rebut this testimony by showing that it was indeed possible for appellant to molest E.M. when other people were present because he had done the same thing before under similar circumstances. 

Appellant also asserts that the trial court gave an improper limiting instruction to the jurors regarding the purpose for which they could consider Garcia’s testimony.  Appellant, however, failed to object to the trial court’s instruction.  Therefore, he has forfeited this complaint on appeal.
(footnote: 13)  

Probative Value and Prejudicial Effect
 

In his second issue, appellant asserts that the trial court abused its discretion by admitting Garcia’s testimony over his rule 403 objection  because the probative value of her testimony was outweighed by its prejudicial effect.
(footnote: 14) Otherwise admissible evidence may be excluded under rule 403 if 
its probative value is substantially outweighed by the danger of unfair prejudice.
(footnote: 15)  Unfair prejudice refers to “an undue tendency to suggest decision on an improper basis such as an emotional one.”
(footnote: 16)  Rule 403 favors admissibility and contains a presumption that relevant evidence will be more probative than prejudicial.
(footnote: 17)
 The trial court should consider several factors in determining whether the prejudicial effect of evidence substantially outweighs its probative value under Rule 403.
(footnote: 18)  These factors include:

1) how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable;

2) the extraneous offense's potential to impress the jury in some irrational but indelible way;

3) the trial time that the proponent will require to develop evidence of the extraneous misconduct; and

4) the proponent's need for the extraneous transaction evidence.
(footnote: 19)
 In this case, Garcia’s testimony that when she was a young girl, appellant touched her breasts and “vagina” while another person was in the room was highly probative and an important part of the State’s case because whether the offensive touching of E.M. occurred at all was a hotly contested issue.
(footnote: 20) The court of criminal appeals has recognized that in prosecutions for sexual offenses, a successful conviction “often depend[s] primarily on whether the jury believe[s] the complainant, turning the trial into a swearing match between the complainant and defendant.”
(footnote: 21)  Because two of E.M.’s family members testified to appellant's lack of opportunity to sexually molest E.M., Garcia’s rebuttal testimony provided, at a minimum, a “small nudge” towards proving that the molestation could have indeed occurred.
(footnote: 22)  Further, Garcia’s testimony provided credibility to E.M.’s testimony in light of the fact that she was ten years old at the time of trial, both her grandmother and great aunt testified that it was impossible that the offenses occurred, and appellant elicited evidence from E.M.’s mother and community supervision officer to imply that E.M. made up this story to prevent her mother from going to prison.
(footnote: 23)  Therefore, we conclude that Garcia’s testimony was highly probative to a fact of consequence in the case and the State’s need for the evidence was high.

The time the State needed to develop the extraneous offense evidence was minimal.  Garcia’s testimony appears in less than nine pages in a seven volume trial record.  

In addition
, “while evidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way, our rules of evidence require the exclusion of relevant evidence only if the danger of unfair prejudice, delay, or needless repetition substantially outweighs the probative value.”
(footnote: 24)  While Garcia’s testimony carried some emotional weight, the danger of unfair prejudice created by the testimony did not substantially outweigh its probative value.  

For these reasons, we conclude that the trial court's decision to admit Garcia’s testimony in this case fell within the zone of reasonable disagreement and was not an abuse of discretion.  Accordingly, we overrule appellant’s second issue.

Conclusion
 

 Having overruled appellant’s two issues, we affirm the trial court’s judgment.
 

PER CURIAM

PANEL F: CAYCE, C.J.; WALKER and McCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 22, 2007

 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. R. Evid.
 404(b).

3:
During closing arguments, appellant’s trial counsel stated that “just weeks . . . before these allegations pop up, [the mother was] told by her probation officer that if she [did not] . . . come up with a bunch of money, they’re going to file a motion to revoke on her” and that the mother had coerced E.M. into believing that appellant had molested her so that the mother could make an agreement with the prosecution to exchange her testimony for a dismissal of the State’s application to revoke her community supervision. Appellant cites the fact that the district attorney ultimately dismissed the State’s motion to revoke the mother’s community supervision five days after the jury’s verdict on punishment as support for this theory.  

4:
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  

5:
Id.

6:
Romero v. State
, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990) (citing 
Spann v. State
, 448 S.W.2d 128, 130 (Tex. Crim. App. 1969)).  The trial court explained its rationale for admitting the extraneous offense evidence by stating, “[T]he probative value of [Garcia’s] proffered testimony far exceeds or substantially outweighs any potential danger of unfair prejudice, particularly in view of the probative value - - particularly of greater probative value at the conclusion of the State’s case.  And I might also point out that not only is it indicative of opportunity, it’s offered in rebuttal to the argument of Defendant that there was no opportunity . . . but also it’s . . . in rebuttal to an apparent frame-up theory, which was specifically mentioned by Defense counsel yesterday afternoon when he alluded to a scheme accusing the prosecutor of participating in a scheme.” 

7:
Tex. R. Evid.
 404(b); 
Marc v. State
, 166 S.W.3d 767, 775 (Tex. App.—Fort Worth 2005, pet. ref'd). 

8:
See Moses
 
v. State
, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

9:
Montgomery v. State
, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990); 
Russell v. State
, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth 2003, pet. ref'd).

10:
See Wheeler v. State
, 67 S.W.3d 879, 887-88 (Tex. Crim. App. 2002);
 Shipman v. State,
 604 S.W.2d 182, 185 (Tex. Crim. App. 1980) (stating that State “may not rely on its own questioning” to get into collateral matters, extraneous offenses, and bad acts that “would otherwise be inadmissible”).

11:
Wheeler
, 67 S.W.3d at 887 (extraneous offense evidence admissible to rebut frame-up theory that complainant’s testimony was motivated by money and revenge); 
see also Boutwell v. State
, 719 S.W.2d 164, 179 (Tex. Crim. App. 1985) (extraneous offense evidence in child sexual assault cases may be admissible to rebut contention that “defendant was being framed by the witnesses”); 
Johnston v. State
, 418 S.W.2d 522, 522 (Tex. Crim. App. 1967) (extraneous acts of sodomy with other boys admissible to rebut defense of “frame-up”).

12:
Wheeler
, 67 S.W.3d at 884 n. 9 (holding that when the defense presented opinion testimony that had no relevance other than to imply that the appellant was not the type of person to commit child sexual abuse, the defense had “opened the door”); 
see also Blackwell v. State
, 193 S.W.3d 1, 12 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d) (when testimony that defendant was like a regular parent who did a good job of raising two other boys was offered to support a defensive theory that appellant lacked intent to commit alleged sexual offenses against another child who was a relative of the defendant, State was allowed to rebut the testimony with extraneous offense evidence); 
Abshire v. State,
 62 S.W.3d 857, 860 (Tex. App.—Texarkana 2001, pet. ref’d) (held that when defendant presented testimony that he was never alone with complainant on the day of the alleged sexual assault and that he was not the type of person who would commit such a crime, he presented a defensive theory that may be rebutted by extraneous offense evidence). 

13:
See 
Tex. R. App. P.
 33.1(a);
 Mosely v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998), 
cert. denied
, 526 U.S. 1070 (1999) (a party must present to the trial court a timely and specific request, objection, or motion to preserve a complaint for our review).  

14:
See 
Tex. R. Evid.
 403.  

15:
Id.
; 
Jones v. State
, 119 S.W.3d 412, 421 (Tex. App.—Fort Worth 2003, no pet.).

16:
Newberry v. State
, 135 S.W.3d 22, 43 (Tex. Crim. App.), 
cert. denied
, 543 U.S. 990 (2004).  

17:
Rayford v. State
, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003)
, 
cert. denied
, 543 U.S. 823 (2004); 
Hayes v. State
, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).  

18:
Wheeler
, 67 S.W.3d at 888.

19:
Lane v. State
, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996).

20:
See Wheeler
, 67 S.W.3d at 888 (stating that if question of whether offensive touching occurred at all is a hotly contested issue in case, State has high need for similar extraneous offense evidence).

21:
See Wheeler
, 67 S.W.3d at 888 (quoting 
Boutwell
, 719 S.W.2d at 177-78).  

22:
See id.
;
  Montgomery
, 810 S.W.2d at 381.

23:
See Wheeler
, 67 S.W.3d at 888-89.

24:
Id.